People v Maisonette (2021 NY Slip Op 01528)





People v Maisonette


2021 NY Slip Op 01528


Decided on March 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 18, 2021

108798

[*1]The People of the State of New York, Respondent,
v
Joenathan Maisonette, Appellant.

Calendar Date: February 9, 2021

Before: Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Adam G. Parisi, Schenectady, for appellant, and appellant pro se.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Garry, P.J.
Appeals (1) from a judgment of the Supreme Court (Milano, J.), rendered August 11, 2016 in Schenectady County, upon a verdict convicting defendant of the crimes of criminal sexual act in the first degree and rape in the first degree, and (2) from an amended order of said court, entered May 16, 2019 in Schenectady County, which denied defendant's motion to, among other things, settle the record.
Defendant was charged by a four-count indictment with crimes related to his sexual abuse of an 11-year-old child (hereinafter the victim). At trial, Supreme Court dismissed one count, and the jury acquitted defendant of another count but convicted him of criminal sexual act in the first degree and rape in the first degree. The court sentenced him to two consecutive prison terms of 20 years, followed by 20 years of postrelease supervision. Defendant appeals from the judgment of conviction. Defendant later moved to settle the record on appeal and for a reconstruction hearing on the grounds that there were various alleged omissions and alterations to the transcripts. Defendant also appeals from Supreme Court's denial of that motion.
"Parties to an appeal are entitled to have that record show the facts as they really happened at trial, and should not be prejudiced by an error or omission of the stenographer" (People v Bethune, 29 NY3d 539, 541 [2017] [citation omitted]), but "not every dispute about the record mandates a reconstruction hearing" (id. at 542 [internal quotation marks, brackets, emphasis and citation omitted]). "Reconstruction hearings may be appropriate where it is clear that a proceeding took place that was not transcribed; the trial court refused to record the proceedings; the minutes have been lost; or there is significant ambiguity in the record" (People v Velasquez, 1 NY3d 44, 49 [2003] [internal citations omitted]). Despite defendant's arguments, none of these situations exists here; defendant merely asserts that the transcribed record omits some statements that he allegedly made at various times. However, the transcripts show that sometimes defendant began making the statements he alleged but was cut off by Supreme Court or advised not to speak. Thus, a reconstruction hearing would not be helpful, as the record makes clear that the statements were not omitted but, rather, the court prevented defendant from making such statements because he was represented by counsel, or it was an inappropriate time. It appears that the transcripts are generally accurate, defendant presented only his own affidavit to support his assertion that the alleged statements were made, and any missing words do not affect this Court's ability to resolve the appeal. Accordingly, as defendant failed to establish entitlement to a reconstruction hearing, the court did not err in denying defendant's motion (see People v Bennett, 165 AD3d 1624, 1625 [2018]; compare People v Johnson, 175 AD3d 14, 19 [2019]).
In challenging the weight of the evidence, defendant [*2]primarily contends that the victim's testimony was incredible. The victim unequivocally testified that defendant had subjected her to anal sexual contact on one occasion and vaginal intercourse on another. Medical evidence supporting the victim's disclosure indicated that the victim tested positive for a sexually transmitted infection and had an injury to her hymen that is "rarely seen in non-abused children." Other evidence included the victim's and defendant's birth certificates establishing their ages, and testimony from the victim's mother and a cousin establishing the times when the acts occurred and that defendant had access to the victim during those times. Although a different verdict would not have been unreasonable, the victim "was extensively cross-examined regarding the incident[s] and her account was not contradicted by any compelling evidence and was not so unworthy of belief as to be incredible as a matter of law" (People v Rose, 185 AD3d 1228, 1230 [2020] [internal quotation marks, ellipsis and citations omitted], lv denied 35 NY3d 1115 [2020]). Viewing the evidence in a neutral light and deferring to the jury's credibility determinations, the verdict is not against the weight of the evidence (see People v Rose, 185 AD3d at 1230; People v Johnson, 183 AD3d 77, 87-88 [2020], lv denied 35 NY3d 993 [2020]).
"The prompt outcry doctrine is an evidentiary rule permitting the admission of hearsay evidence that a victim promptly complained of a sexual assault on the ground that some jurors would inevitably doubt the veracity of a victim who failed to promptly complain of a sexual assault" (People v Leonard, 177 AD3d 1158, 1160 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 1160 [2020]; see People v Rosario, 17 NY3d 501, 512 [2011]). "A prompt outcry is admissible to corroborate the allegation that an assault took place, as long as it is made at the first suitable opportunity" (People v Hackett, 167 AD3d 1090, 1094 [2018] [internal quotation marks and citations omitted]), "but there is and can be no particular time specified[;] [t]hus, promptness is a relative concept dependent on the facts" (People v McDaniel, 81 NY2d 10, 17 [1993] [internal quotation marks and citation omitted]; accord People v Ortiz, 135 AD3d 649, 650 [2016], lv denied 27 NY3d 1004 [2016]; see People v Caban, 126 AD3d 808, 808-809 [2015], lv denied 27 NY3d 994 [2016]). "[A] significant delay in reporting does not necessarily preclude outcry evidence, especially where the victim is a child" (People v Ortiz, 135 AD3d at 650). Although the episodes of abuse described by the victim occurred on three different dates between February 2015 and April 2015 and the last episode did not result in a conviction, that last episode occurred four days prior to the disclosure reflected in the testimony of the victim and her mother. Considering the victim's age, that defendant was an authority figure in her life and her testimony that she was scared [*3]of defendant, Supreme Court did not err in concluding that such disclosure was admissible as a prompt outcry (see People v Lapi, 105 AD3d 1084, 1088 [2013], lv denied 21 NY3d 1043 [2013]; People v Stuckey, 50 AD3d 447, 448 [2008], lv denied 11 NY3d 742 [2008]; Matter of Gregory AA., 20 AD3d 727, 728 [2005]; compare People v Ortiz, 135 AD3d at 650).
On a related note, Supreme Court did not abuse its discretion in admitting testimony that the victim had observed defendant hitting her mother. The victim testified that she delayed in disclosing the abuse because she was afraid of getting in trouble by her mother or defendant, and she was scared of defendant because he had always given off a scary look and she had seen him hit her mother. The mother testified that, within the week before the victim's disclosure, the victim had witnessed defendant perpetrate a physical assault on the mother. The domestic violence was witnessed after the first two incidents of sexual abuse against the victim, but appears to have occurred prior to the final charged incident. Although the domestic violence could not have been the reason for the victim's initial failure to disclose, her observation of that event could be seen as a verification of her prior feeling that defendant was scary. As a victim's fear may be considered in determining whether a disclosure is prompt (see People v Evangelista, 155 AD3d 972, 973 [2017], lv denied 31 NY3d 1013 [2018]; People v Sprague, 151 AD3d 1921, 1924 [2017], lv denied 30 NY3d 1023 [2017]; People v Stuckey, 50 AD3d at 448; see also People v Nicholson, 26 NY3d 813, 829-830 [2016]; Matter of Gregory AA., 20 AD3d at 727-728), this Molineux evidence was properly admitted because it provided necessary background as to why the victim feared defendant and completed the victim's narrative as to why she had not immediately disclosed the abuse (see People v Latnie, 180 AD3d 1238, 1243 [2020]; People v Conway, 179 AD3d 1218, 1220 [2020], lv denied 35 NY3d 941 [2020]). Furthermore, the court immediately provided limiting instructions to explain the proper use of, and minimize the prejudicial effect of, the testimony (see People v Meadows, 183 AD3d 1016, 1021 [2020], lv denied 35 NY3d 1047 [2020]; People v Schwerbel, 224 AD2d 830, 831-832 [1996]).
"Hospital records fall within the business records exception when they reflect acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise helpful to an understanding of the medical or surgical aspects of the particular patient's hospitalization. Where details of how a particular injury occurred are not useful for purposes of medical diagnosis or treatment, they are not considered to have been recorded in the regular course of the hospital's business" (People v Ortega, 15 NY3d 610, 617 [2010] [internal quotation marks, brackets, ellipsis and citations omitted]; accord People v Nelson, 128 AD3d 1225, 1228 [2015], lv denied 26 NY3d 1041 [2015]; see People v Garrand[*4], 189 AD3d 1763, 1769 [2020]). However, where a child was or may have been abused, just as in a domestic violence situation, "[d]etails of the abuse, even including the perpetrator's identity, may be relevant to diagnosis and treatment . . . because the medical provider must consider the victim's safety when creating a discharge plan and gauging the patient's psychological [or counseling] needs" (People v Pham, 118 AD3d 1159, 1162 [2014], lv denied 24 NY3d 1087 [2014]; see People v Duhs, 16 NY3d 405, 408-409 [2011]; People v Hansson, 162 AD3d 1234, 1239 [2018], lv denied 32 NY3d 1004 [2018]; Matter of Luis P., 161 AD3d 59, 76 [2018], affd 32 NY3d 1165 [2018]; compare People v Santiago, 156 AD3d 1386, 1389 [2017], lv denied 31 NY3d 1017 [2018]).
The People successfully sought admission of the victim's medical records and the testimony of two medical professionals, all of which revealed the victim's statements that defendant had sexually abused her. Although a physician assistant testified that knowing the identity of the perpetrator was not necessary for her examination, the examining pediatrician testified that this information is relevant and important to make sure that the child is in a safe environment. Despite the contrary statement of the physician assistant, based upon the significant role that defendant had in the victim's life and the fact that he had regular access to her home, his identity was germane to the victim's medical care, as it was important for the creation of a proper discharge plan (see People v Duhs, 16 NY3d at 408; People v Hansson, 162 AD3d at 1239; Matter of Luis P., 161 AD3d at 76). Accordingly, Supreme Court did not err in admitting the medical records and related testimony at trial, as they were relevant to the victim's treatment and recorded in the regular course of business (see People v Ortega, 15 NY3d at 617; People v Garrand, 189 AD3d at 1769; People v Nelson, 128 AD3d at 1228; People v Rogers, 8 AD3d 888, 892 [2004]).
"A claimed violation of the constitutional right to the effective assistance of counsel will not survive judicial scrutiny so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Dickinson, 182 AD3d 783, 789 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1065 [2020]). "[A] defendant is required to demonstrate that he or she was not provided meaningful representation and that there is an absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Bowen, 185 AD3d 1219, 1221 [2020] [internal quotation marks and citations omitted]). "[T]rial counsel cannot be ineffective for failing to advance an argument that has little or no chance of success" (People v Williams, 35 NY3d 24, 45 [2020]).
Defendant's primary allegations of ineffective assistance rely upon counsel's failure [*5]at trial to renew objections to the admissibility of evidence and to move to strike testimony. Because Supreme Court had decided these issues prior to the testimony in question, in response to pretrial motions or motions in limine, counsel was not required to renew his objections upon the elicitation of the testimony nor move to strike it in order to preserve the objections for appellate review (see People v Finch, 23 NY3d 408, 413 [2014]; People v Guy, 93 AD3d 877, 879 [2012], lv denied 19 NY3d 961 [2012]).
Defendant did not preserve his arguments that the admission of certain medical reports violated hearsay rules and his right to confrontation, and we decline to exercise our interest of justice jurisdiction. Although defendant contends that counsel should have objected to admission of evidence regarding the victim and her mother having tested positive for a sexually transmitted infection — on grounds of hearsay, lack of foundation, and violation of Confrontation Clause rights because the People did not present testimony from the technicians who performed the tests — counsel may have had strategic reasons for allowing this evidence to be admitted. For instance, counsel used those positive test results, in contrast with defendant's negative test results — which were also admitted without testimony from the technicians who performed those tests — to argue that defendant was not the source of the victim's or her mother's infection (see People v Forney, 183 AD3d 1113, 1117-1118 [2020], lv denied 35 NY3d 1065 [2020]). Counsel presented cogent opening and closing statements, engaged in thorough cross-examination, argued extensively regarding the admissibility of evidence, and obtained the dismissal of one count and acquittal on another. Viewing the record as a whole, we find that defendant received meaningful representation (see People v Bombard, 187 AD3d 1417, 1420 [2020]; People v Robinson, 183 AD3d 1118, 1123 [2020], lv denied 35 NY3d 1069 [2020]).
Supreme Court did not err in sustaining the People's objection to, and issuing a curative instruction regarding, defense counsel's statements in summation that defendant was a victim of false allegations, the charges were serious and they carry the potential for a lengthy sentence of imprisonment. These statements were improper because they went beyond merely questioning witness credibility and, rather, were designed to elicit sympathy from the jury (see People v Garrow, 126 AD3d 1362, 1364 [2015]; People v Armstrong, 299 AD2d 224, 225 [2002], lv denied 99 NY2d 612 [2003]). We have reviewed defendant's remaining contentions and find them to be without merit.
Egan Jr., Pritzker, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the judgment and amended order are affirmed.